**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CHRISTOPHER BRADBERRY**                                                          **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 4:22-cv-69-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                          **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for DIB and SSI. The parties have consented to entry of final judgment by the United States Magistrate Judge, with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and should be and is hereby **AFFIRMED.**

### Statement of the Case

Plaintiff, Christopher Bradberry, filed an application for a period of disability on November 21, 2019, and a claim for supplemental security income on November 27, 2019, alleging disability since March 31, 2019. The applications were denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing, which was held on November 24, 2020. The Plaintiff's wife attended the hearing, he was represented by Joe Morgan Wilson, and Robert D. Moseley, an impartial vocational expert, also appeared. The ALJ issued an Unfavorable Decision in this cause on December 2, 2020.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 31, 2019. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: bipolar disorder, schizoaffective disorder, depression, and PTSD. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), including Listing 12.03, 12.04, and 12.06. Specifically, the ALJ noted:

> In understanding, remembering or applying information, the claimant has a moderate limitation. He has shown no significant cognitive deficits, but could be distracted if having psychotic episodes. He would be able to perform at least unskilled work. In interacting with others, the claimant has a moderate limitation. He has been cooperative with treatment providers, and shown the ability to interact as necessary to meet his needs. However, prolonged contact seems to stir his paranoia, so a limit to occasional interaction is warranted. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. He has shown no deficits in concentration or memory, even with more severe symptoms present. He could maintain attention and concentration for at least two hours at a time. As for adapting or managing oneself, the claimant has experienced a moderate limitation. He has adapted to changing situations such as moving in with family members and ending of relationships with only a temporary moderate change in his overall symptoms.

Tr. 34.

The ALJ then found that claimant has the RFC to perform a full range of work at all exertional levels with additional mental limitations. Specifically, he found that Plaintiff could "understand, remember, and carry out instructions for simple, routine tasks. He is able to interact with supervisors, coworkers, and the public occasionally. He is able to tolerate few, if any, changes in a routine work setting." Tr. 34.

At step four, based upon VE testimony, the ALJ found that the Plaintiff was able to perform his past relevant work as a wooden frame builder (DOT 762.684-066), medium exertion, SVP; 2. The claimant was born on May 8, 1988, and was 30 years old, which is defined as a younger

individual age 18-49, on the alleged disability onset date. He testified that he had a tenth grade education. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. Alternatively, at step five, the ALJ determined that there were unskilled light jobs available in significant numbers in the national economy, including representative occupations such as marker (DOT# 209.587-034), an unskilled job performed at the light exertional level, with 125,000 jobs in the national economy; as a routing clerk (DOT # 222.687-022), an unskilled job performed at the light exertional level, with 95,000 jobs in the national economy; and as a cleaner, housekeeping, (DOT# 323.687-014), light in exertion, with 215,000 jobs in the national economy.

Thus, the ALJ found the Plaintiff not disabled. Plaintiff appealed, and the Appeals Council issued an Order affirming the decision on March 17, 2021, thereby making it the decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act.

## Discussion

Plaintiff raises three issues: (1) whether the ALJ erred by failing to consider the medical opinion found in Exhibit 11F; (2) whether the ALJ erred by failing to order a CE; and (3) whether the ALJ erred in his questioning of the VE. Having found that substantial evidence supports the ALJ's decision, the undersigned finds that the ALJ's decision should be affirmed.

As to the first issue, Plaintiff argues that the ALJ erred by failing to consider the medical opinion found in Exhibit 11F. The undersigned has reviewed Exhibit 11F, which is a Daily Living Activities (DLA-20) Alcohol-Drug Form used for telehealth services by Lifecore Health Group. Tr. 786. Lee Ann Hillhouse, M.Ed., LPC, NCC signed the form on September 21, 2020, where she found that in the last thirty days, Plaintiff had severe impairments in functioning more than 75%

3

of the time. Tr. 786. However, the undersigned notes that the ALJ repeatedly notes throughout his denial that he considered all of the evidence in assessing Plaintiff's claim. Tr. 26, 27, 29. While Plaintiff asserts that this form is a medical opinion, the government argues that for claims filed by adults on or after March 27, 2017, the regulations contain a more focused definition of medical opinion, and that this "form" does not qualify as a medical opinion. *See* Def.'s Br. [20] at 2-3. The September 2020 Form specifically notes that it only considered Plaintiff's functioning over the last thirty days, while the ALJ in his opinion noted that he considered Plaintiff's functioning for the entire relevant period. Tr. 26, 27, 29, 781. Plaintiff admits in his brief that "it is questionable whether this was a full medical opinion or not." Pl.'s Br. [19] at 7. Furthermore, while the ALJ must consider all of the evidence, he need not discuss all of the evidence. SSR 96-8p at *7.

The ALJ was detailed in his analysis of the Plaintiff's mental health history. He found that in the years prior to the alleged onset date year of 2019, Plaintiff had a pattern of use of illicit drugs and alcohol, but during periods of abstinence from illicit drug use, his symptoms were essentially under total control with medication. Tr. 33. The ALJ found that while the records from the years predating his alleged onset date are not relevant to his level of functioning during the relevant time period, they provide helpful context to his treatment and behavior in the relevant time period. Tr. 33. His medical records reveal that he had an inpatient stay at Mississippi State Hospital from April 25, 2018, to May 28, 2018, where his diagnoses were methamphetamine use disorder, cannabis use disorder, and unspecified mood disorder. Tr. 398.

In 2019, the claimant was placed under the care of Lifecore again after being released from jail on a domestic violence charge. Court filings show that he had been abusing methamphetamine prior to the incident, beginning in April 2019. At the intake visit after his release from jail, he reported severe hallucinations and paranoia. He used appropriate speech

4

during the intake and showed an appropriate, but guarded affect. He had an irritable mood. He was fully oriented. His initial treating diagnoses were bipolar disorder, and PTSD with dissociative symptoms, as well as amphetamine and cannabis use disorders. He was recommended for inpatient care for drug abuse early in this new round of treatment. Tr. 33.

Records from Lifecore dated October 2019 show he had been abstinent from cannabis and methamphetamine since July 2019. He still reported hallucination. He was not taking any antipsychotic medication but was on Depakote. Mental status examination showed no abnormal findings. Haldol was added to his medication schedule for his hallucinations. Tr. 33.

In January 2020, during a visit to Lifecore, the claimant said that he still used marijuana, He said that he did not like the side effects of his medications, adding that they were not working to control his symptoms. He showed good memory, concentration, and cognition. He was diagnosed for the first time with schizoaffective disorder, bipolar type. His prior diagnosis of PTSD was affirmed. He was prescribed new medications to replace some with which he was dissatisfied. Tr. 33.

The claimant returned for a visit with Lifecore two weeks after his medication changes amd reported he was sleeping better, and that his auditory hallucinations had ceased, although he continued to have some visual hallucinations. His eye contact had improved, and he continued to show no deficits in concentration, memory, or cognition. Tr. 33-34.

At a visit in April 2020 for medication refill, the claimant had completely normal mental status examination results. His insight, judgment, mood, behavior, and affect were all normal (Exhibit 8F). However, in May 2020, he reported that he had stopped taking one medication due to unpleasant neurological side effects. He said that he had lost his refill prescriptions for other medications. He reported poor sleep patterns, occasional suicidal ideation, and that his

hallucinations had returned. He again had limited judgment and insight, with a dysthymic mood. He was given new prescriptions for his lost ones, and a substituted medication for the one he did not like (Exhibit 10F).

The Plaintiff's testimony at the hearing included that he could not work due to continued problems with paranoia and hallucinations. He said that these occurred daily and that he sometimes had conversations with people that were not there. He stated that he still used marijuana sometimes and reported frequent panic attacks and depression. Tr. 35. The Plaintiff's mother, Becki Bradberry, provided responses to a Third-Party Function Report in December 2019. She said that when he previously lived with her, he was severely depressed and rarely left bed. He did not help with cooking or household chores and relied on others to drive him around. She said that he was angry, emotional, unpredictable, and paranoid. Tr. 35-36.

Nonetheless, the ALJ found that while the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ found that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 36.

The ALJ considered agency opinions of Jesse Dees, Ph.D., who offered the opinion in November 2018 that the claimant had no severe mental impairments and currently "everything is going well." Ex. 3A. A second state agency consultant, Dr. Cherilyn Hebert, agreed with this opinion in March 2019. The ALJ found these opinions unpersuasive because the Plaintiff "clearly has psychosis and paranoia which would interfere to at least some degree with his ability to perform work-like functions." Tr. 36.

In December 2019, Vicki Prosser, Ph.D., also a State agency consultant, offered the opinion

that the claimant had severe mental impairments, with moderate limitation of the abilities to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; or, to adapt or manage himself. Specifically, she found that he was capable of understanding and carrying out instructions and maintaining attention and concentration for two-hour periods in an eight-hour workday. She stated that he could complete a normal forty-hour workweek without excessive interruptions from psychologically-based symptoms, and that he could interact appropriately with coworkers and supervisors on a limited basis while adapting to a job setting. She also noted that Plaintiff had been clean for 6.5 months. Further, Dr. Prosser noted that a CE was not required. (Exhibit 9A).

In April 2020, another State agency consultant, Dr. Glenn James, agreed with this opinion (Exhibit 13A). Dr. James also found that a CE was not necessary. The ALJ found these opinions persuasive because the opinion is consistent with the claimant's demonstrated behavior, even during a period of less than optimum control of symptoms. He showed this level of ability at least in the following months through the date of this decision. Tr. 36; Ex. 13A.

Ultimately, the ALJ found that Plaintiff's treatment records show that he has had very good control of his symptoms since January 2020, less than twelve months after the alleged onset date. He had abstained from methamphetamine and reduced use of marijuana. He had shown normal mental status examination and extremely reduced psychosis with proper medication. He had a relapse of symptoms for a brief period when he had no medication, but these were quickly brought back under control with medication. Throughout his treatment history, he showed no deficits in cognition, memory, or concentration. He was able to interact with others, such as treatment providers, on a limited basis. There was good indication that prolonged interaction would not be

beneficial to his level of functioning, as paranoia could set in. The ALJ found that since he has not been disabled with drug use, he would not be disabled without it. According to the ALJ, the Plaintiff was granted the benefit of the doubt and there is no convincing evidence to support a more limiting residual functional capacity. Tr. 36-37.

The undersigned notes that even if the ALJ would have specifically mentioned his consideration of Exhibit 11F, it would not have changed the outcome of the ALJ's denial considering that the form was dated September 2020 and the Plaintiff had a completely normal mental status examination documented in April 2020 at Exhibit 8F. The ALJ provided a lengthy, detailed summary of the Plaintiff's mental health history, which is highlighted herein. Despite doing so, the ALJ found that Plaintiff had not shown disabling symptoms for any twelve-month or expected twelve-month period, even with his level of drug use. Tr. 37. The ALJ found that there was no convincing evidence to support a more limiting RFC than what was established, and the Court finds that such decision is supported by substantial evidence. Tr. 37.

Plaintiff failed his burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevented him from engaging in SGA. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Exhibit 11F reflecting findings for a one-month period does not refute the ALJ's determination regarding Plaintiff's failure to satisfy the Act's durational requirements. Here, the undersigned is unable to find that the ALJ's failure to specifically mention Exhibit 11F constitutes reversible error.

As to the second issue, the Plaintiff argues that the ALJ erred by failing to order a CE. This is a case where a psychological and medical expert both determined that Plaintiff was able to work despite his mental impairments. Tr. 111, 132. Here, Plaintiff has not demonstrated that a CE was necessary, and neither of the state agency physicians whose opinions the ALJ found to be reliable

found that a CE was necessary. Case law is clear that the decision to require such an examination is discretionary. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Where the record contains sufficient evidence to make a disability determination, there is no basis for an examination at agency expense. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). The undersigned is unable to find that failure to order a CE in this case constitutes reversible error.

In addition, the undersigned does not find error as to the third issue raised by the Plaintiff. Plaintiff admits that the ALJ offered an RFC to the VE that matched his ultimate RFC assessment. Pl. Br. [19] at 9. The Court agrees with Defendant that the VE's testimony cited in support of Plaintiff's appeal was in response to Plaintiff's attorney's hypothetical questions regarding a person who would be off task ten to fifteen percent after normal breaks or who would typically miss two days a month for six consecutive months. Tr. 70. The VE was answering his attorney's questions, not offering his own expert opinion that the hypothetical individual would miss at least one or more days a month while experiencing mental impairments. Because the ALJ did not find those mental limitations supported by the record, he properly declined to rely on those responses in making his decision.

Lastly, while the issue was not raised by the Plaintiff, the Defendant briefly mentioned the issue of waxing and waning in oral argument. Thus, it bears mentioning here that there is no requirement "that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case," unless by its nature, the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Morris v. Kijakazi*, No. 1:21-CV-84-JMV, 2022 WL 1277282 (N.D. Miss. Apr. 28, 2022), citing *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The Court finds that not only was the issue not briefed on appeal, but based upon the record before it, there was no requirement for a *Singletary* analysis in this case. *Singletary v. Bowen*, 798 F.2d

818 (5th Cir. 1986).

## Conclusion

For the reasons stated above, the Commissioner's decision is hereby **AFFIRMED.**

**THIS**, the 24th day of February, 2023.

/s/ Jane M. Virden<br>
United States Magistrate Judge